# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs August 20, 2014

## WILLIE DOUGLAS JOHNSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 94873      Mary B. Leibowitz, Judge**

---

**No. E2013-02826-CCA-R3-PC - Filed September 30, 2014**

---

The Petitioner, Willie Douglas Johnson, appeals the post-conviction court's denial of post-conviction relief from his convictions for attempted second degree murder and unlawful possession of a weapon. On appeal, the Petitioner argues that he received ineffective assistance of counsel. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J., and DAVID A. PATTERSON, SP. J., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the Petitioner, Willie Douglas Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zetner and John H. Bledsoe, Assistant Attorneys General; Randall Nichols, District Attorney General; and Leslie Nassios, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

This appeal stems from the shooting of the victim, Kenneth L. King, on December 19, 2006. In relation to this incident, the Petitioner was indicted on one count of attempted first degree murder, two counts of especially aggravated robbery, and three counts of unlawful possession of a weapon. On direct appeal, this court summarized the underlying facts of the Petitioner's case as follows:

> At approximately 10:15 p.m. [on December 19, 2006], the victim returned to his residence with his girlfriend, and as he exited his vehicle, the [Petitioner] approached him with a gun drawn. The victim elaborated, "By the time I got out of my car and turned around, [the Petitioner] was up on me with a pistol

in my stomach, walked up on me and was like, 'Empty your pockets, mother f*****.'" According to the victim, he dropped approximately $140 to the ground, and when the [Petitioner] bent over to retrieve the money, he pushed the [Petitioner] and ran away. At that point, the [Petitioner] fired four shots at the victim, and one shot struck the victim in the lower back. The victim stated that when he looked back, he saw the [Petitioner] drive away in a blue or black Buick LeSabre.

The victim testified that he had known the [Petitioner] since "growing up." He recalled that just before the shooting, he received a telephone call from Katoia Banks, whom he had dated for two to three months earlier in the year, but he did not answer the call. He stated that Ms. Banks had also briefly dated the [Petitioner]. Immediately after the shooting, the victim returned Ms. Banks's call and told her that the [Petitioner] had shot him. He recalled that his girlfriend took the telephone from him and began arguing with Ms. Banks.

The victim was transported to the hospital by ambulance and remained hospitalized for three days following the shooting. He testified that doctors elected to leave the bullet rather than remove it, and he stated that he continued to experience "problems" with his back.

Knoxville Police Department Detective A.J. Loefller interviewed the victim at the hospital. The victim identified the [Petitioner] as the perpetrator from a photographic lineup.

Ms. Banks testified that she had dated the [Petitioner] for nine or ten months, but the relationship ended before the shooting. She stated that the [Petitioner] blamed the victim for the breakup. She recalled that on the day of the shooting, the [Petitioner] telephoned her several times to "apologize about going off on [her] the day before." When Ms. Banks refused to meet with the [Petitioner], he told her he was "going to get that n*****," meaning the victim. Ms. Banks testified that she "immediately hung up the phone and called [the victim] to let him know that he needed to be careful because . . . [the Petitioner] was about to do something to him." She was unable to reach the victim at that time, but he "called [her] about five or ten minutes after [she] called him and he said [her] name, and [she] couldn't really understand what he was saying and then his girlfriend got on the phone and said he'd been shot." When Ms. Banks spoke with the [Petitioner] later, he told her "it was [her] fault that he shot" the victim.

During cross-examination, Ms. Banks reiterated that although she was dating neither man at the time of the shooting, the [Petitioner]'s unrequited love for her motivated him to shoot the victim. Ms. Banks denied that it was she who had been rebuffed in her attempts to rekindle a romantic relationship with the [Petitioner]. She admitted that the [Petitioner] never actually told her he shot the victim and conceded that she did not contact police with information regarding the shooting.

Knoxville Police Department Officer Ray Offenbacher, who responded to the shooting, testified that he observed a single gunshot wound to the victim's lower back. He recalled the victim's "screaming" in pain. He stated that the victim told him that "the subject approached him from the rear, made a statement to him, and then he took off running towards the house from the car, and that's when he heard the shots." Officer Offenbacher testified that the victim never told him that he had thrown money onto the ground or that the [Petitioner] took any money from him.

Other evidence established that four Winchester .380 caliber shell casings were recovered from the area of the shooting. No weapon was ever recovered.

The State rested its case, and the [Petitioner] offered no proof. Based on the evidence presented, the jury convicted the [Petitioner] of attempted second degree murder and two counts of aggravated assault. Following a second, bifurcated proceeding, the jury also convicted the [Petitioner] of three counts of unlawful possession of a weapon.

State v. Willie Douglas Johnson, No. E2008-02057-CCA-R3-CD, 2009 WL 2226171, at *1-2 (Tenn. Crim. App. July 27, 2009).[1] On direct appeal, the Petitioner argued, inter alia, that the trial court erred by ruling that the State would be permitted to impeach his testimony through the use of prior felony convictions. Id. at *1. This court affirmed the judgments of the trial court on appeal. Id.

On June 25, 2010, the Petitioner filed a pro se petition for post-conviction relief. He was subsequently appointed counsel and an amended petition was filed on his behalf on October 5, 2012.

---

[1] The trial court merged the Petitioner's aggravated assault convictions into his attempted second degree murder conviction and his weapon possession convictions into a single conviction. See Willie Douglas Johnson, 2009 WL 2226171, at *1.

-3-

At the July 1, 2013 post-conviction hearing, the Petitioner testified that counsel was appointed to represent him in this case. The Petitioner stated that he discussed with counsel whether he should testify at trial, and counsel told him that it would "be best for [him] not to testify" because the State would use his prior convictions to impeach him. He maintained that had counsel successfully excluded his prior convictions, he would have elected to testify at trial. Had he testified at trial, the Petitioner claimed he would have testified that he did not "know [the victim] personally," and he had nothing to do with the shooting. He claimed that he had not seen the victim since 2000.

The Petitioner testified that he had a sexual relationship with Katoia Banks and that he ended the relationship in 2006 prior to the shooting. He claimed that he ended the relationship when he discovered that Ms. Banks was married but that Ms. Banks continued to have a romantic interest in him. He explained that she would call other women with whom the Petitioner had relationships and gossip about him. The Petitioner agreed that Ms. Banks took out a protective order against him. He claimed that the last time he had contact with Ms. Banks was at the end of November or the first week in December 2006. He maintained that he did not have any contact with Ms. Banks on December 19, 2006, the day of the shooting. The Petitioner testified that he never discussed the victim with Ms. Banks and did not know that Ms. Banks and the victim ever had a relationship. He stated that he did not care who Ms. Banks dated.

The Petitioner testified that at the end of December 2006, he suffered from shingles and took medication that made him go to bed around 9:00 or 10:00 p.m. He denied shooting anyone and claimed that the first he learned of the victim's shooting was when he was arrested and came to court. He opined that the victim named him as the shooter because Ms. Banks told him that the Petitioner shot him. He reiterated that he was not aware of any animosity that the victim had towards him. The Petitioner testified that he told counsel that he did not have anything to do with the victim's shooting and discussed with her his relationship with Ms. Banks. He also told counsel about his medical issues, explaining, "I wear a colostomy bag. And if you – if I bend over to pick something up and you push me, I'm going to fall[.]"

On cross-examination, the Petitioner reiterated that he told counsel about his alibi defense but agreed that there were no witnesses to corroborate his alibi. He acknowledged that he had previously been convicted of two counts of aggravated robbery, one count of aggravated assault, one count of felony theft, and two counts of possession of cocaine. He recalled that counsel argued that these convictions should not be admissible to impeach him and that the trial court excluded the aggravated robbery convictions as "too prejudicial." He claimed that he was "forced" not to testify because at the time he did not know that the aggravated assault conviction might have been excluded because it was over 10 years old.

-4-

He acknowledged that this was "not a sure thing." He agreed that someone with six prior felony convictions might not be found to be a credible witness by the jury.

Counsel testified that she was appointed to represent the Petitioner in this case and another assault charge involving Ms. Banks. She represented the Petitioner from his preliminary hearing through sentencing. Counsel explained that after sentencing the Petitioner was "extremely angry" with her, and their communication had deteriorated to such an extent that she "did not feel comfortable in continuing to represent him." She filed a motion to withdraw as counsel but, at the request of the trial court, continued to represent the Petitioner on his motion for a new trial. Subsequently, a new attorney was appointed to represent the Petitioner on appeal.

In preparation for the Petitioner's trial, counsel had her investigator interview Ms. Banks. The investigator also attempted to locate the other witness that was in the car with the victim during the shooting, but the investigator was never able to locate this witness. Counsel extensively researched the admissibility of the Petitioner's prior convictions and prepared a motion in limine to exclude the prior convictions. She met with the State on multiple occasions and received a plea offer prior to trial, but the Petitioner told counsel that he "was not interested in accepting any type of plea." She advised the Petitioner that he was likely to receive a "substantial amount of time" if convicted based on his criminal history but recalled that the Petitioner was "adamant" that he would not accept any plea offer.

Counsel discussed with the Petitioner whether he should testify at trial and recalled that the Petitioner "never indicated to [her] that he had any intention of testifying." She explained that the Petitioner "never offered [her] any sort of indication of what his defense would be" and "never wavered in [the] fact that he did not intend to testify." She maintained that the Petitioner never told her that he had shingles and was at home in bed at the time of the shooting. She did not make an offer of proof of the Petitioner's testimony at trial because the Petitioner never gave any indication that he would have testified even if his prior convictions had been excluded. Counsel opined that the Petitioner would not have made a good witness, given his criminal history and the strength of the State's case. However, she insisted that she did not tell him not to testify and stated that if he had wanted to testify, she would have worked to prepare him. Regarding Ms. Banks, counsel opined that she was "a good witness" and that her testimony was "particularly damaging." Counsel also agreed that the victim was a good witness and never wavered in his identification of the Petitioner as the shooter.

On cross-examination, counsel agreed that the Petitioner's prior convictions were "significant" in her assessment of whether she believed the Petitioner should testify but reiterated that the Petitioner never really considered testifying. She agreed that there was no

ballistic evidence or DNA evidence linking the Petitioner to the crime and that the only direct evidence specifically placing the Petitioner at the scene was the testimony of the victim. Counsel acknowledged that she did not ask Ms. Banks about the order of protection that she took out against the Petitioner in an attempt to show Ms. Banks's potential bias. Counsel noted, however, that such questions could have opened the door to evidence of the Petitioner's prior acts of violence.

Following the hearing, the post-conviction court took the matter under advisement and issued a written order denying relief on December 4, 2013.

## ANALYSIS

On appeal, the Petitioner argues that he received ineffective assistance of counsel based on counsel's failure to successfully exclude his prior convictions for aggravated assault and possession of cocaine as impeachment evidence. Additionally, he asserts that counsel rendered ineffective assistance of counsel by failing to make an offer of proof of his testimony at trial to ensure adequate appellate review.[2] The State responds that the post-conviction court properly denied relief because Petitioner has failed to establish that counsel provided deficient performance or that the Petitioner suffered prejudice as a result. Upon review, we agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for

---

[2] The Petitioner raised several additional grounds for relief in his petition. These grounds were addressed by the post-conviction court and were not raised by the Petitioner in his brief to this court. Accordingly, we do not address them on appeal.

post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of

detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

The Petitioner first complains that counsel failed to properly argue to the trial court that his prior conviction for aggravated assault should not be admitted for impeachment purposes under Rule 609 of the Tennessee Rules of Evidence because the probative value did not outweigh its prejudicial effect. He maintains that had counsel properly framed the issue for the trial court, the trial court would have excluded the use of this conviction and he would have testified, or alternatively, the Petitioner would have had the issue reviewed on the merits by this court on direct appeal.[3] In denying relief on this ground, the post-conviction court reasoned that the Petitioner's argument "is speculative" and fails to establish that but for any alleged errors by counsel, the result of the proceedings would have been different. In other words, notwithstanding any errors by counsel, the Petitioner failed to establish that he was prejudiced as a result. We agree.

At the post-conviction hearing, counsel testified that she discussed with the Petitioner whether he should testify at trial and advised him that the State would likely be able to use some of his prior convictions to impeach his testimony. She testified that the Petitioner never indicated to her that he intended to testify at trial, irrespective of whether the prior convictions were ruled inadmissible. Further, he never provided her with an alibi defense or any other idea of what his defense might be if he testified. Although the Petitioner offered conflicting testimony at the post-conviction hearing, the post-conviction court accredited counsel's testimony over that of the Petitioner. We will not reweigh or reevaluate this evidence on appeal. Vaughn, 202 S.W.3d at 115. Accordingly, we are not persuaded that had counsel successfully excluded that Petitioner's prior convictions that the Petitioner would have elected to testify.

Moreover, the Petitioner has failed to establish that, had he elected to testify, there is a reasonable probability that the outcome of the proceedings would have been different. See Michael O. Brown v. State, No. M2001-00917-CCA-MR3-CD, 2002 WL 1827560, at *9 (Tenn. Crim. App. Aug. 8, 2002), perm. app. denied (Tenn. Dec. 2, 2002) (holding that the

_____

[3] On direct appeal, a panel of this court concluded that the Petitioner waived review of the trial court's ruling that the aggravated assault conviction could be used for impeachment purposes because the Petitioner failed to raise the issue in the court below. See Willie Douglas Johnson, 2009 WL 2226171, at *4.

petitioner "cannot establish prejudice by merely showing that he would have testified" but for counsel's erroneous advice that his prior convictions would be admissible to impeach his testimony). The State's evidence against the Petitioner, albeit not overwhelming, was strong. Ms. Banks testified that the Petitioner told her that he was "going to get" the victim shortly before the Petitioner arrived at the victim's residence and shot him. The victim positively identified the Petitioner as the shooter and, according to counsel, never wavered in his identification of the Petitioner. At the post-conviction hearing, the Petitioner acknowledged that he had no witnesses to corroborate his alibi defense or any other evidence to dispute the testimony of the State's witnesses. Likewise, counsel testified that the Petitioner never indicated to her what defense he might present to dispute the State's evidence. We agree with the post-conviction court that the Petitioner has failed to establish any prejudice arising from counsel's alleged errors. The Petitioner is not entitled to relief.

Next the Petitioner argues that counsel rendered ineffective assistance of counsel by failing to make an offer of proof of his testimony to ensure adequate appellate review of the trial court's ruling allowing the use of two prior felony drug convictions for impeachment purposes. Initially, we note that the post-conviction court failed to make specific findings regarding trial counsel's failure to make an offer of proof. See T.C.A. § 40-30-111(b) (requiring the court to enter an order containing its findings of fact and conclusions of law for each ground raised by the petitioner); Tenn. R. S. Ct. 28, § 9(A) (stating that the order must contain specific findings of fact and conclusions of law for each issue raised by the petitioner). This issue was raised by the Petitioner in his amended petition, and a review of the post-conviction hearing shows that the court heard proof on this issue. In the order denying post-conviction relief, the post-conviction court accredited counsel's testimony over that of the Petitioner and concluded that the Petitioner failed to establish deficient performance or prejudice. See Claude F. Garrett v. State, No. M2011-00333-CCA-R3-PC, 2012 WL 3834898, at *24 (Tenn. Crim. App. Sept. 5, 2012), perm. app. denied (Tenn. Feb. 25, 2013) (concluding that although the court's order denying post-conviction relief did not contain findings of fact or conclusions of law on the issue of trial counsel's ineffectiveness for failing to request a mistrial, the record was sufficient for appellate review because it contained the trial transcript providing the factual basis of the Petitioner's claims and the post-conviction court's determination that trial counsel's performance was neither deficient nor prejudicial); State v. Swanson, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984) (holding that although written findings of fact and conclusions of law on each issue facilitate appellate review, reversal is not required when there is an adequate record for review). Here, the post-conviction transcript, the court's findings of fact and conclusions of law regarding the related issues of trial counsel's failure to successfully exclude the Petitioner's aggravated assault conviction, and the court's final holding that the Petitioner failed to establish deficient performance or prejudice arising therefrom provides an adequate record for our review.

Upon our review of the record, we cannot conclude that counsel's failure to make an offer of proof of the Petitioner's testimony constituted deficient performance. First, we note that the Tennessee Supreme Court has expressly held that "[t]here is no requirement in Rule 609(a)(3) that the defendant make an offer of proof" in order to preserve the issue for appellate review. State v. Galmore, 994 S.W.2d 120, 124 (Tenn. 1999). The supreme court further noted that to require a defendant to outline his testimony through an offer of proof

> is beset with pitfalls. Aside from the potential unconstitutionality of requiring a defendant to make an offer of proof, the requirement is unmanageable. As noted by the United State Supreme Court, a defendant's proffer of testimony is inappropriate because his trial testimony could, for any number of reasons, differ from the proffer. The nature and scope of the proffer, as well as the prosecutor's use of the defendant's proffered testimony, if he testifies, for impeachment purposes at trial, raise thorny questions about the extent to which the state can cross-examine the defendant and use the defendant's testimony at trial. Moreover, requiring the defendant to make an offer of proof exposes him to the tactical disadvantage of prematurely disclosing his testimony.

Id. at 123-24 (citing State v. Whitehead, 517 A.2d 373, 377 (N.J. 1986) (internal quotation marks and citations omitted)). We acknowledge that, as noted by this court on direct appeal, in certain cases "an offer of proof may be the only way to demonstrate prejudice." See Galmore, 994 S.W.2d at 125. However, with these concerns in mind, we are hesitant to conclude that counsel's decision not to make an offer of proof of the Petitioner's testimony fell below "an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369; see also Strickland, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight[.]").

Moreover, at the post-conviction hearing, counsel repeatedly testified that the Petitioner never indicated to her that he intended to testify, regardless of the court's ruling on the admissibility of the prior convictions. She also testified that the Petitioner never provided her with any alibi defense or any other indication of what his defense might be if he testified. As such, she believed there was no reason to make an offer of proof of his testimony. Counsel's testimony was accredited by the post-conviction court and rebuts the Petitioner's testimony that he informed counsel that he wished to testify and would have told the jury his alibi defense. Tennessee courts have consistently held that "it is entirely reasonable for counsel's actions to be influenced by a defendant's own statements." Nichols v. State, 90 S.W.3d 576, 593 (Tenn. 2002) (citing Strickland, 466 U.S. at 691 (stating that reasonableness of counsel's actions "may be determined or substantially influenced by the

defendant's own statements or actions")). Accordingly, we discern no deficiency by counsel. The Petitioner is not entitled to relief.

## CONCLUSION

Based on the foregoing authority and analysis, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE